Case number 23-1025, et al. Troutbrook Company, LLC, doing business as Brooklyn 181 Hospitality, LLC, petitioner versus National Labor Relations Board. Mr. Eron, for the petitioner, and Ms. Poseid, for the respondent. Good morning, please the court. I'm Thomas Eron, a bunch and a king on behalf of Troutbrook. We're here asking the court to deny enforcement of an order from the National Labor Relations Board. Case presents two interrelated questions. First is, there's substantial evidence in the record as a whole to support the finding that our hotel insisted indefinitely the resolution of all non-economic subjects before negotiating economic subjects in the collective bargaining for a first contract. The second question is, what caused these negotiations for a first contract to break down? As the administrative law judge found, so the record of bargaining here is in writing. Parties were negotiating during COVID. They were all telephonic communications, and there were detailed bargaining notes, as well as multiple emails between the principal negotiator. And this record is focused strictly on the bargaining. There are no allegations of unlawful conduct outside of the bargaining, no claim of unlawful threats or unlawful changes to wages or terms of employment, no discriminatory treatment of union supporters, no other evidence of animus to the union. And we must recognize that these negotiations occurred in the context of the COVID pandemic in 2020. And as you can hear, it had a devastating effect both on the hospitality industry in New York City and on this particular hotel, which is a small, independent hotel. Mr. Fischer, can I ask you to focus your factual arguments under the pretty demanding substantial evidence standard? Certainly, Your Honor. So how do you overcome that? I think there are two key big-picture points and then some very specific points. In terms of big picture, we have a split decision, the labor board, one member dissenting. And there is a concern that the board did not fully, the majority did not fully evaluate the totality of the circumstances. In particular, did not appreciate, did not give appropriate consideration to the interplay in the collective bargaining. The union's position from day one was that it had a master agreement. This document, over 100 pages, covers multiple subjects. And the union insisted that the company provide a complete response. In the ALJ's decision, in her recitation of the facts, she recites 18 different times when the union demanded a complete response. And the board failed to evaluate and consider appropriately the impact of that approach to bargaining. In any bargaining, there is a trade-off, one side to the other, and what one side does affects the impact of the other. And the failure here on the board's part was in not considering the union's conduct and the consequences. So, for example, a very specific language that the board uses to find a violation is that the employer insisted indefinitely on the resolution of all non-economic subjects before negotiating economic subjects. There was no insistence here. The employer initially proposed a ground rule but modified that to allow simultaneous discussion. It's not even an appropriate description of the employer's position to say it was non-economics. The employer's proposals included a proposal on overtime pay, a proposal on work schedules, which are critical to the economics of the business, not simply non-economic subject. It didn't persist indefinitely on this position. This negotiation was just getting started. More short, introductory discussion that were cut short because the union insisted that the employer was obligated to provide a complete contract proposal. And I think just on, so, for example, given the substantial evidence standard, the board did explicitly find that the union did not present the IWA on a, as they put it, a take-it-or-leave-it basis and repeatedly emphasized its flexibility with respect to both economics and contract wording. So, certainly, that was their initial proposal, but there's a lot of evidence in the record about how the union offered to make adjustments and have an MOU that adjusted to Troutbrook's circumstances. So, how can we sort of accept your view that the union was doggedly insisting without inflexibility on the full IWA in light of the board's findings? There's no question that the approach that the company took here was a legitimate approach. In fact, the union's negotiator, Mr. Martin, conceded that he had seen this approach before he recognized it as a reasonable approach. And the company's goal was to get a simple, clear contract. The union, in fact, the union's approach was to bargain from this document. And if you add a writer to a 100-page document, you just have a longer document. You do not have a simple, clear collective bargaining agreement. So, the two approaches were completely inconsistent. And the record is very clear that the union said there is a legal obligation for the company to provide a complete response. We are stopping negotiations, going to the labor board. We want to get a ruling on that issue. And when they went to the labor board, the general counsel chose not to pursue that issue. That is not the basis for the decision here. And that's what caused this negotiation to fall apart. Right, so the unfair labor practice that the board found is a refusal to bargain over mandatory subjects of bargaining. So, I understand the possible exceptions of overtime in the other example you mentioned. But it seems to me one simple question is, did the company ever engage on or give a counterproposal on, for example, wages, retirement benefits, or health benefits? It did not, Your Honor. However, it did present several significant proposals, and the union chose not to make any counterproposals on those individual proposals. And I would submit to you that that's a critical difference between the precedent that the board is relying on. Examine those earlier cases. Each case, there was a back and forth, a give and take. The best example, frankly, is the patent trader case, where it was a new contract, the union came in with a standard area agreement. When the employer objected to that, they began negotiating over specific issues, and there was back and forth. There was a counterproposals from the union. They moved off of their master agreement. Mr. Ayer, is your position also that the board's decision here is arbitrary and capricious and contrary to law? Our position is that it's bad labor policy, Your Honor, because it sets up a situation- Bad labor policy? Yes. Under the statute? Or- Yes, yes. That it is- I mean, we're not here to enforce labor policy. We're here to enforce the law. Right, I understand, Your Honor. But as we're evaluating the legal consequences of the board's decision, it's fair to recognize that it puts in the hands of a single party the ability to demand a complete response on all issues early in the process. That is going to thwart the ability to reach agreement. Is the legal problem with that, that it's inconsistent with board precedent, that it's inconsistent with the NLRA? What is the legal argument? That it's inconsistent with the purpose of the statute, which is to support and encourage collective bargaining and the resolution of disputes. And this rule of law does not achieve that result. Is there a specific provision of the NLRA that you believe the board has violated here? No, Your Honor, that's not the point that we're making. The underlying goal in this is to determine whether the parties have an intent to reach an agreement. And we submit that the company's approach was consistent with that intent, and that there's nothing outside of the bargaining or within the bargaining that would lead to the conclusion that they acted in bad. And as we analyze the impact of the board's decision on this overall goal of statute to achieve labor peace, this decision takes us in a direction that's going to make it more difficult to achieve consensus, reach compromises, and avoid labor disputes. So we would ask that the court deny enforcement. Could I just ask one last question? In reference to the impact of the pandemic, I just want to make sure I understand the argument, because to the extent the question is, if we thought there was otherwise evidence that the company did not engage on economic subjects, I of course understand the pandemic created a lot of uncertainty, but maybe that would just create good conditions for the employer to insist on very lean economic proposals. Is your argument that somehow the pandemic justified postponing discussion of those subjects entirely? And why would that be? That's not our argument. There are two elements that I think are relevant from the pandemic. The first is there was a great deal of upheaval in the industry and at this employer. At the start of this process, there were 30 employees in the bargaining unit. By the time they sat down to do the negotiations, it was down to eight. In the course of all that, there was no claim that the union supporters were adversely treated or treated unfairly. And the second point is that,  It was a very difficult time for the hotel. And the negotiation process stalled and not robust in the way that would have been in a more normal economic environment. The management of the hotel was worried about keeping the hotel going. And these negotiations did not proceed far enough to make the judgment that the board made here. I see, thank you. Thank you. Good morning, Your Honor. David Seid from the Labor Board. Two initial points. First, the record amply supports the board's finding that the company unlawfully refused to bargain over economic terms until non-economic terms were resolved. That evidence, which includes numerous statements made by the company during bargaining that are summarized at page 35 of the board's brief, repeatedly referenced the need to resolve non-economic terms. Well, what about the fact that the board here doesn't seem to have taken into account the union's conduct? I mean, the union had its own particular bargaining position which is that it wanted to start with the IWA. It wanted a counter proposal to that. Obviously, the hotel had a different bargaining position. So, I mean, if the board's responsibility is to take into account the totality of the circumstances in the negotiations, isn't the failure to just to completely, to totally disregard what the union did and make the decision not supported by substantial evidence? Your Honor, very simply, the board did not ignore what the union did. What the company has presented to this board is basically an alternative view of the facts, but it hasn't shown that the record compels this court to come to a different conclusion. And so, with respect to the argument made about the union's conduct, the board first very reasonably noted that the focus is on the company's conduct because it has a statutory obligation under the act to discuss terms such as wages of employment and of wages. And the board then, however, did very specifically consider the union's conduct. At page 331 of the appendix, part of the board's decision, the board looked at what the union did and it did recognize that, yes, initially, the union did want the company to accept the IWA as it existed, but it then suggested, well, if you don't like the IWA as it's written, we can make as many changes as you want to at least use it as a basis that we're talking the same language. But the hotel rejected that bargaining position as well. They didn't want to start with the IWA. They wanted a simpler, pared down, shorter contract, which is my understanding of that as well within its rights under the NLRA. Absolutely, Your Honor. But then the union and the alternative said, okay, if you insist on starting with an entirely new contract at least give a full trinity of issues, the main terms and conditions- Well, again, that was a bargaining position. It's not, it wasn't that the hotel was then required to do what the union asked. Your Honor, it's required under section 8B of the act to specifically discuss terms such as wages. It cannot do, as it did here- But it didn't have to present a counter proposal as the union demanded. Your Honor, but what it- Like a full counter proposal. Correct, it didn't, right. That's correct. And so the board did not find that the union, that the employer violated the act by failing to submit a complete counter proposal. And so, for example, and hesitant to make a hypothetical here, but could there have been a situation? And one of the things that the company is trying to argue is that basically negotiation short-circuited. Had the company come back with a full wage proposal and the union still said, well, you know, not good enough. We're not going to consider your full wage proposal until you give us something else. Then could it arguably be a different case? Possibly, but that's not what happened here. The union repeatedly stated, look, accepting that you as a company want to start with an entirely new contract, we don't think we have to go that way, but if that's what you want to do, at least give us something and start with something like wages and benefits, really elephant in the room. And the company's response was continually, even at the last bargaining session, the second to last bargaining session, non-economic first, and then eventually after we settle those, we'll get to economic. Well, I mean, both sides were being intransigent to some extent. They both wanted to start from different bargaining positions. And the act specifically says that, you know, obviously the employer has an obligation under Section 80, but such obligation does not compel either party to agree to a proposal or require the making of a concession. Correct, Your Honor. It doesn't require a concession, but it does require to at least discuss the terms. Would it not have been a concession to start with a proposal the way that the union wanted? Your Honor, if parties agree to discuss non-economic terms first, they're welcome to. When the parties do not have such an agreement, it is unlawful for an employer to insist on resolving the non-economic terms until it will even make or discuss economic proposals. And that's what the company did here. And just briefly touching on the pandemic, the company never argued to the board, and I think it acknowledged that argument this morning, that the pandemic in and of itself provided an excuse for not providing proposal on wages and benefits. And as the board did note, to the extent it is being relied upon, counsel made abundantly clear from the very first session that it simply bargained in the process of starting with non-economic. Of course, it did not even, to my knowledge, even raise the pandemic initially. And there was no question that while the pandemic had an effect in bargaining that led to the hiatus, I would simply note that the hiatus in the pandemic affected all the parties. It affected the employees who had voted at this point for union representation several years earlier that have obvious concerns as to whether their wages might be frozen or cut. It has an impact on the union because when bargaining does resume, the certification year has essentially ended. And at that point, if the employer has a belief that the employees no longer support the union, it has the ability to just simply walk away. So it affected everybody, not just the company. Can you point to other board precedents where there's been such a short time of bargaining? I mean, here there was, everyone acknowledges a seven month or so, I think, hiatus, right? So the actual time of bargaining was a few months over a handful of sessions. And it seems to me that the precedents where there's some finding of bad faith, I mean, usually involve many more bargaining sessions, many more hours of bargaining, many more months of bargaining. I mean, here, in some ways, they had sort of just gotten started in a sense. And so how is the board's decision here consistent with its precedent? It's consistent. So cases such as first student, there were, which is cited in the board's brief, there were about six bargaining sessions over eight months. Sunbelt rentals, there was bargaining over about four months. But one of the things I would also point out here is that even in some of these cases where the board found a violation, what typically happens is a union will make an entire proposal as a community here. At that point, the employer may take the position that it would prefer to discuss non-economic subjects first. There's no formal agreement that resolution has to be reached. And in response, the employer, even in some of these cases where eventually a violation was found, the employer comes back with a full counter-proposal on non-economic matters. It accepts a lot of what the union proposed and makes some minor changes. So is the board's position here that employers have to do this? When presented, when the union says we want a full counter-proposal, employers have to do that? I mean, is that the bottom line of the board's decision? No, again, the board not- There are several things you've said here in argument that suggest this is the board's position, which suggests that Chairman Ring maybe have been right in his concerns about the majority's opinion. That is not what the board's decision suggested or that council is suggesting. Simply noting that here, the union repeatedly expressed to at least get a proposal or a discussion about wages and benefits, the elephant in the room, and that even in situations where employers have been found to eventually have violated the act by not providing or discussing an economic proposal, oftentimes the employers in those situations do a lot more than the company did here by making, at least on non-economic terms, a somewhat comprehensive proposal, which the company didn't even do here. That's all I'm suggesting, but it's not in any way suggesting that the company was required to, at the first bargaining session or the second bargaining session, provide a full counter-proposal. The board is- What about the third or fourth bargaining session? No, or even the third or the fourth. Again, it's a case-by-case basis as to at what point did a employer violate the act by failing to provide or discuss economics. And on the facts of this particular case, when it hits the fifth bargaining session and the union has been pleading for, at minimum, if you want to present your own offer, your own contract, at least give us something about wages and benefits, the company responds, intending to negotiate over a subset of non-economic subjects, then move on to another subset, and ultimately move on to economics. At that point, where there is five sessions or 20 sessions or 30 sessions, the board could very reasonably find that the company was refusing to negotiate over economic subjects at a situation where it is impacting and preventing bargaining. So does that mean- I mean, what if they had just said, let's talk a little bit about the union's proposal on health benefits, and had, to some extent, a discussion and expressed concerns about that? Would that be enough to yield a different outcome? And why? Your Honor, again, on a case-by-case basis, but if the employer had started to indicate a willingness to engage the union on e-economic subjects, it very well could have a different result, but it made absolutely no attempt in this case, as it admittedly stated, both in argument this morning, as well as in previous court. Unless this court has any further questions, the board would simply ask that the court inform its order. Thank you, Your Honor. I'll give you two minutes on rebuttal. Thank you, Your Honors. Just briefly, counsel for the board referenced Sundell case. There were significant, that was short bargaining, there were significant actions by the employer demonstrating an anti-union animus case that has clearly distinguished it from the present case. And I think we need to be clear on the record as to what the union's position was. There is substantial evidence that it requested a complete response, and it did not provide any counter-proposals unless and until there was a complete response. I respectfully submit that counsel for the board misstated the union's position that it was only looking for a response on wages or benefits that has no support in the record. And we would, again, renew our request to deny enforcement of this board order. Thank you very much. Thank you.
judges: Rao, Garcia, Rogers